# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEY STONE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-16-BAJ-RLB** |
| **JUAN AMADOR, ET AL.** | |

## ORDER

Before the Court is Plaintiff's Motion to Compel Adequate Responses to Interrogatories and Requests for Production of Documents and to Compel Depositions ("Motion to Compel"). (R. Doc. 17).[1]  The motion is opposed. (R. Doc. 20).

Also before the Court is USAA Casualty Insurance Company's Motion to Quash Deposition and Discovery and/or Protective Order With Request for Oral Argument ("Motion for Protective Order"). (R. Doc. 18).  The motion is opposed. (R. Doc. 19).

The Court finds oral argument to be unnecessary to resolve the instant related motions.

## I.    Background

Plaintiff initiated this action in state court on January 9, 2019 with the filing of his Petition for Damages. (R. Doc. 1-2 at 1-6).  Therein, Plaintiff alleges that he suffered injuries on or about June 7, 2018, when he was rear-ended by a 2005 Dodge Ram operated by Defendant, Juan Amador.  Plaintiff named as Defendants the alleged tortfeasor, Juan Amador, Amador's alleged liability carrier, Geico Casualty Company ("Geico"), and Plaintiff's alleged UM carrier, USAA Casualty Insurance Company ("USAA"). (R. Doc. 1-2 at 1).

---

[1] Plaintiff also submitted a "Motion for Oral Arguments and Contradictory Heating on Plaintiff's Motion to Compel" as an attachment to the Motion to Compel. (R. Doc. 17-4).

On August 2, 2019, USAA sent Plaintiff a check in the amount of $165,000 "encompassing med-pay and an unconditional tender under UM" based on a "review and evaluation of the documents and materials received to date." (R. Doc. 18-6).

USAA removed this action on January 8, 2020, alleging that there is diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1).   In the Notice of Removal, USAA asserts that while Juan Amador is a non-diverse defendant domiciled in Louisiana, his citizenship should be ignored because he is a nominal defendant who is being dismissed from the suit. (R. Doc. 1 at 3).[2]

On February 3, 2020, Plaintiff made a formal written demand in light of his alleged injuries and medical bills. (R. Doc. 18-8).  In response, USAA noted that Plaintiff was "trending toward recovery" until a subsequent accident on March 5, 2019, and requested "additional information to evaluate the impact the second accident had on [Plaintiff's] alleged injuries." (R. Doc. 18-9).

On June 16, 2020, the Court granted Plaintiff leave to amend the pleadings to allege bad faith allegations and extended the non-expert discovery deadline to October 5, 2020. (R. Doc. 13).  In the amended pleading, Plaintiff seeks recovery of penalties and attorneys' fees under La. R.S. 22:1892 and 22:1973 on the basis that the February 3, 2020 demand provided proof of loss and Plaintiff's claims remained unpaid without probable cause. (R. Doc. 14).

On July 31, 2020, the parties held a discovery conference regarding the instant discovery disputes and the parties agreed on certain issues, including the production of a privilege log and supplemental responses. (R. Doc. 17-8).

On August 7, 2020, USAA provided amended discovery responses (R. Doc. 17-9) and a privilege log (R. Doc. 17-10).

---

[2] USAA has filed a motion for dismissal of Amador and Geico with prejudice in light of a state court order dismissing those defendants on February 27, 2020, over one month after removal to federal court. (R. Doc. 15).

On August 10, 2020, Plaintiff sent an additional letter asserting that the supplemental responses and privilege log remain deficient and seeking supplemental responses and productions in two days to preclude the filing of a motion to compel. (R. Doc. 17-12).

On August 12, 2020, the parties filed the motions. (R. Docs. 17, 18).

Plaintiff's Motion to Compel seeks an order compelling USAA: (1) to provide complete answers to Interrogatory Nos. 20, 21,[3] 22, 23, and 24 to Plaintiff's Second Set of Interrogatories; (2) to provide complete responses to Requests for Production of Documents Nos. 37-43, 45, and 46 of Plaintiff's Second Request for Production of Documents; (3) to produce a privilege log in compliance with Rule 26 of the Federal Rules of Civil Procedure; (4) to provide dates for the deposition of the claims handler Lisa Bocanegra, any additional claims handlers, and USAA's Rule 30(b)(6) corporate deposition; and (5) to pay reasonable fees and expenses incurred in filing the motion.

USAA's Motion for Protective Order seeks an order quashing the noticed Rule 30(b)(6) deposition and related requests for documents on the basis that Plaintiff is seeking attorney-client privileged information or the discovery topics are overly broad or seek irrelevant information.

## II.    Law and Analysis

### A.    General Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

---

[3] Plaintiff's motion in certain places omits Interrogatory No. 21 from the topics covered in certain conferences between the parties.  Since this interrogatory is briefed by both sides, it will be addressed by the Court.

burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d

530, 541 (5th Cir. 1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories.  A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items.  A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a).  The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A).  This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b).  If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37.  An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 30(b)(6) governs deposition notices directed to organizations.  In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).  In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization."  *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally

known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).  The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

### B.    Analysis

#### 1.    Certifications of Good Faith

Rule 37(a)(1) of the Federal Rules of Civil Procedure provides that any motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).  Similarly, Rule 26(c)(1) of the Federal Rules of Civil Procedure provides that any motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1).  In addition, the Court's initial scheduling order informed the parties that "[a]ny motions filed regarding

discovery must be accompanied by a certificate of counsel for the moving party, stating that counsel have conferred in person or by telephone for purposes of amicably resolving the issues and stating why they are unable to agree or stating that opposing counsel has refused to so confer after reasonable notice." (R. Doc. 4 at 1).

The record indicates that the parties held a discovery conference on July 31, 2020 and the parties agreed to certain issues, including the production of a privilege log and supplemental responses. (R. Doc. 17-8; *see* R. Doc. 17-2). The record further indicates that the parties did not hold any further discovery conference for the purposes of resolving any remaining issues prior to the filing of the instant discovery motions. At most, Plaintiff sent a letter identifying deficiencies remaining in USAA's supplemental production just two days prior to the filing of the Motion to Compel. (*See* R. Doc. 17-12).

It does not appear that either party made a good faith effort to resolve the specific issues addressed in the instant motions prior to the filing of the motions. That said, the Court finds it appropriate to consider the merits of the motions to avoid any further inefficiencies. The Court will consider the lack of proper Rule 37(a)(1) and Rule 26(c)(1) certifications in the context of considering whether to award any fees and expenses.

### 2.    The Privilege Log

USAA produced a 3-page privilege log providing the date, a brief description of the withheld document, and the basis for asserting privilege. (R. Doc. 17-9). The 33 entries appear to mostly consist of e-mail communications and begin with the date March 15, 2019, two months after the filing of this lawsuit in state court.

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i)

expressly make the claim; and (ii) describe the nature of the documents, communications, or

tangible things not produced or disclosed--and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim." Fed. R.

Civ. P. 26(b)(5)(A).  Blanket assertions of a privilege are unacceptable, and the court and other

parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d

530, 541 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044 n. 20 (5th Cir.

1981)).  In addition, this Court's Local Rule 26(c) provides the following:  "A party withholding

information claimed privileged or otherwise protected must submit a privilege log that contains

at least the following information: name of the document, electronically stored information, or

tangible things; description of the document, electronically stored information, or tangible thing,

which description must include each requisite element of the privilege or protection asserted;

date; author(s); recipient(s); and nature of the privilege." LR 26(c); *see also Cashman Equip.*

*Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009)

("[A] privilege log . . . should not only identify the date, the author, and all recipients of each

document listed therein, but should also describe the document's subject matter, the purpose for

its production, and a specific explanation of why the document is privileged or immune from

discovery.") (quoting *Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 (M.D. La. Mar. 10,

2008)).

        USAA had a duty to produce a timely privilege log in conformance with Rule

26(b)(5)(A) of the Federal Rules of Civil Procedure and Local Rule 26(c).  Plaintiff is correct

that the privilege log does not meet the requirements of Local Rule 26(c) because it does not

identify the specific authors and recipients of each document.  Requiring USAA to identify this

non-privileged factual information in a revised privilege log will not result in any undue burden, as the privilege log only contains 33 entries.

In light of the foregoing, USAA must provide a revised privilege log in compliance with Local Rule 26(c) within **14 days** of the date of this Order.

### 3.    Attorney-Client Privilege and Work Product Immunity

#### a.    General Privilege Issues Raised

The parties dispute whether and to what extent Plaintiff may obtain discovery regarding his bad faith claims added to this lawsuit on June 16, 2020 through the filing of Plaintiff's First Amended and Supplemental Petition. (R. Doc. 14). That amended pleading provides that Plaintiff seeks recovery of penalties and attorneys' fees under La. R.S. 22:1892 and 22:1973 on the basis that the February 3, 2020 demand provided proof of loss and Plaintiff's claims remained unpaid without probable cause. There is no dispute, therefore, that the facts concerning Plaintiff's alleged bad faith claims arose on or after the February 3, 2020.

The primary issue raised by the added bad faith claims is that Plaintiff initiated the instant lawsuit over one year prior to submitting the February 3, 2020 demand. In its Motion for Protective Order, USAA seeks "an order quashing the Rule 30(b)(6) Deposition of USAA Casualty Insurance Company noticed by plaintiff, as well as portions of discovery directed to pre-accident actions, procedures, and policies, and post-litigation communications with counsel, and further requests a protective order." (R. Doc. 18 at 1). USAA argues that Plaintiff did not provide proof of loss until after the commencement of this action and, therefore, the post-litigation claims adjustment involving attorney communications and work product are not discoverable in light of the attorney-client privilege and work product doctrine. USAA also argues that because the bad faith claim solely involves a post-litigation value dispute, Plaintiff's

"pattern and practice" requests for "institutional discovery" are irrelevant and unduly burdensome.

In providing Plaintiff leave to amend, the Court did not specifically address the issue of whether the Louisiana bad faith statutes apply to actions taken by an insurer once litigation has commenced. Some federal court decisions have held that Louisiana's bad faith statutes do not apply to post-litigation conduct. *See Premium Finance Co., Inc. v. Employers Reinsurance Corp.,* 761 F. Supp. 450, 452 (W.D. La. 1991) ("Applying [former La R.S. 22:1220] under consideration to post-litigation activities would lead to an absurd result. The absurd result is to expose all litigation with insurers on the main demand to protracted collateral litigation concerning the insurer's post-filing negotiations, as colored by attorney advice, issue development and court rulings. The resulting litigation explosion would thwart the statutory goal of quick resolution of disputed claims and would impede just and reasonable post-filing negotiations."); *Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, No. 06-7232, 2007 WL 4144944, at *3 (E.D. La. Nov. 20, 2007) (rejecting argument that former La. R.S. 22:658 "applies to actions taken by an insurer once the litigation has commenced."). Louisiana state court decisions, however, have stated that the statute applies to post-litigation conduct. *Sher v. Lafayette Ins. Co.,* 988 So.2d 186, 199 (La. 2008) ("an insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period"); *Harris v. Fotenot*, 606 So. 2d 72, 74 (La. 3rd Cir. 1992) (former La R.S. 22:1220 and former La. R.S. 22:658 apply to post-litigation conduct). Federal courts have more recently recognized that post-litigation conduct applies to La. R.S. 22:1892 and La. R.S. 22:1973 in light of these Louisiana state court decisions. *See Kimble v. State Farm Fire & Cas. Co.*, No. 09-1798, 2011 WL 1637142, at *5 (W.D. La. Apr. 29, 2011); *Slade v. Progressive Sec. Ins. Co.*, No. 11-2164, 2013 WL 12182957, at *8

(W.D. La. Feb. 4, 2013), *report and recommendation adopted*, No. 11-2164, 2013 WL 12364259
(W.D. La. Mar. 5, 2013).

In light of the foregoing, the Court finds that USAA's post litigation conduct is within the
scope of discovery.  The instant discovery dispute highlights the issues raised with respect to
discovery of claims and/or negotiation-related information "colored by attorney advice." *See
Premium Finance,* 761 F. Supp. at 452.  Plaintiff concedes in support of his Motion to Compel
that "the contents of any analysis between attorney and client may be privileged" and suggests
that he is only seeking factual information that would not be privileged, including "the identity of
any USAA employee, agent or independent contractor" and "correspondence between USAA
representatives which do not include counsel or between USAA representatives and a third party
other than counsel." (R. Doc. 17-1 at 9, 12).  In response to USAA's Motion for Protective
Order, however, Plaintiff argues that USAA's counsel has "become the *de facto* claims adjuster"
and, therefore, any attorney opinion work product should be discoverable. (R. Doc. 19 at 6-7).

Given the procedural posture of this action, which includes discovery pertaining to
alleged bad faith claims adjustment occurring after the commencement of litigation, the Court
will first address the issue of whether and to what extent the attorney-client privilege and work
product doctrine are applicable.  The Court will then address the specific written discovery and
deposition topics at issue.

### b.    Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to
apply the appropriate state's law concerning the scope and application of the claimed attorney-

client privilege.  It appears that there is no dispute that Louisiana law governs attorney-client privilege in this action.[4]

> The Louisiana Code of Evidence states:
>
> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication . . . .

La. Code Evid. art. 506(B).  Under Louisiana law, both the client and his or her lawyer or the lawyer's representative may claim the privilege. La. Code Evid. art. 506(D).  The party asserting the privilege has the burden of proving its applicability and that a waiver has not occurred. *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La. 1987).

The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989).  As such, when the privilege holder makes a confidential communication a material issue in litigation, "fairness demands treating the defense [or claim] as a waiver of the privilege." *Conkling*, 883 F.2d at 434; *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2008 WL 4186884, at *4 (E.D. La. Sept. 9, 2008) ("Waiver includes conduct which would make it unfair for the client to insist on the privilege thereafter."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999) (recognizing "a client's inability to, at once, employ the privilege as both a sword and a shield.").  In other words, a waiver occurs when the holder pleads a claim or defense in such a way that it will inevitably have to "draw upon a privileged communication in order to prevail." *Conono Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998).

---

[4] "[F]ederal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege." *Akins v. Worley Catastrophe Response, LLC*, No. 12-2401, 2013 WL 796095, at *11 (E.D. La. Mar. 4, 2013).

There does not appear to be any specific dispute with respect to the application of the attorney-client privilege.  Indeed, in opposing USAA's Motion for Protective Order, Plaintiff acknowledges that "analysis and the advice and opinion of counsel relative to appropriate quantum may be deemed protected attorney-client communication" and suggests that he is seeking only "non-privileged information and documents which comprise the Defendant's claims file." (R. Doc. 19 at 5).  Plaintiff raises no specific argument that USAA has waived any asserted attorney-client privilege.

As discussed above, USAA must provide a revised privilege log identifying the specific authors and recipients of withheld communications.  Plaintiff may make any specific challenges to documents withheld on the basis of attorney-client privilege identified on the revised privilege log.  The Court will not issue a general finding that documents in the post-litigation claims file are protected under the attorney-client privilege because "the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. . . . The privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co.*, 682 F.2d 530, 538-39 (5th Cir. 1982) (internal citations omitted).

Similarly, the Court will not issue a blanket protective order precluding Plaintiff from seeking deposition testimony on the basis that the post-litigation claims file includes privileged attorney-client communications.  Defense counsel may instruct the deponent to not answer questions to preserve the attorney-client privilege when appropriate. *See* Fed. R. Civ. P. 30(c)(3).

### c.    The Work-Product Doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery.  Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or

its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product protection is broader in scope and reach than the attorney client privilege. The attorney-client privilege "extends only to client communications, while the work product protection encompasses much that has its source outside client communications." *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412 (S.D. Tex. 2009). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

Work product protections "are held by both the attorney as well as the client" and may be asserted and waived by either. *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). Rule 26(b)(3) distinguishes between "ordinary" and "opinion" work product. "Ordinary" work product is discoverable where it otherwise falls within the scope of discovery and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). "Even if the discovering party is able to show substantial need and undue hardship, opinion work product merits special protection from discovery pursuant to Rule 26(b)(3)(B)." *Lassere v. Carroll*, No. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014); *see* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of [trial preparation] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Courts have nevertheless held that opinion work product becomes subject to disclosure when "mental impressions are at issue in a

case and the need for the material is compelling." *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998) (citations omitted).

The parties dispute whether post-litigation claims handling information is protected under the work product doctrine given the involvement of USAA's attorney.  Plaintiff argues – in the context of opposing USAA's Motion for Protective Order – that he is entitled to production of USAA's entire claims file because USAA's counsel was acting as the *de facto* claims adjuster after commencement of the litigation and Plaintiff has established a compelling need for the information because he has no other means to discover it. (R. Doc. 19 at 7).  The Court will not require production of an entire claims file over which opinion work product protection is asserted based upon such conclusory assertions.  Given the record, "Plaintiffs' conclusory assertions that they cannot establish the defendants' arbitrary and capricious conduct without the withheld documents is insufficient to outweigh the high degree of protection afforded to an attorney's mental impressions, opinions and legal theories." *See Miller v. Favre*, No. 11-615, 2012 WL 6212793, at *2 (M.D. La. Oct. 22, 2012), *aff'd*, 2012 WL 6475612 (M.D. La. Dec. 13, 2012).

As discussed above, USAA must provide a revised privilege log identifying the specific authors and recipients of withheld communications.  Plaintiff may make any specific challenges to documents withheld on the basis of the work product doctrine identified on the privilege log.  Furthermore, defense counsel may instruct the deponent not to answer questions that seek information protected by the work product doctrine when appropriate. *See* Fed. R. Civ. P. 30(c)(3).

### 4.    Confidential Information

The parties have not sought entry of a joint protective order governing the exchange of confidential information in this litigation.  In light of USAA's argument that certain claims

handling documents are confidential and proprietary, the parties are directed to seek entry of an agreed upon protective order governing the exchange of confidential information prior to the production of any confidential information.  *See Elloie v. Allstate Ins. Co.*, No.  07-4434, 2008 WL 4747214, at *7 (E.D. La. Oct. 17, 2008) (requiring the parties to seek entry of a joint protective order restricting the use of confidential information contained in claims handling documents to the instant litigation).

### 5.    Specific Discovery at Issue

#### a.    Interrogatory Nos. 20-24

In his Motion to Compel, Plaintiff seeks supplemental responses to Interrogatory Nos. 20, 22, 23, and 24 to Plaintiff's Second Set of Interrogatories. (R. Doc. 17-1 at 6-10).  These interrogatories primarily concern the identity of persons involved in handling Plaintiff's claims and the receipt and review of documents used to assess the claim.  USAA generally opposes this discovery on the basis that the information sought is irrelevant to the valuation of Plaintiff's claim or is otherwise protected from disclosure as opinion work product.

Interrogatory No. 20 seeks the "names of any and all employees, agents, or independent contractors" acting on USAA's behalf in "investigating the property loss and/or bodily injury claims" at issue, including their address, employer, telephone number, and detailed description of their involvement. (R. Doc 17-5 at 5).  Subject to objections including privilege, USAA responded that "surveillance was attempted by Target Investigative Agency, Inc. in Lafayette, Louisiana."  (R. Doc. 17-5 at 5; R. Doc. 17-9 at 4).  USAA argues that the information sought is irrelevant to Plaintiff's bad faith claim. (R. Doc. 20 at 10).

The Court agrees with Plaintiff that "[w]hile the content of any analysis between attorney and client may be privileged, the identity of any USAA employee, agent or independent

contractor participating in such analysis is not privileged." (R. Doc. 17-1 at 9).  This

interrogatory is seeking factual information regarding those investigating the claims at issue.

USAA must provide a supplemental response fully answering this interrogatory with the

exception that USAA may withhold specific contact information for its own employees, which

Plaintiff's counsel may obtain from defense counsel to the extent necessary.

Interrogatory No. 21 seeks an explanation of the determination of no additional payments

in the "own words" of the USAA claims adjuster. (R. Doc. 17-5 at 5-6).  Subject to objections,

including privilege, USAA asserted that "there is a reasonable and legitimate question as to the

causation and extent of Plaintiff's claim." (R. Doc. 17-5 at 6; R. Doc. 17-9 at 4-5).  The Court

finds this answer sufficient.  Plaintiff may seek a more detailed response from any identified

non-attorney claims handler identified in response to Interrogatory No. 20 in an appropriate

deposition.

Interrogatory No. 22 and 23 collectively seek the identification and location of all

documents used in making the determination that no additional unconditional tender is owed. (R.

Doc. 17-5 at 6-7).  USAA raised several objections, including the attorney-client privilege and

work product doctrine. (R. Doc. 17-5 at 6-7; R. Doc. 17-9 at 5-6).  In seeking this information,

Plaintiff argues that "[c]ertainly, there are medical records and other documents received in

discovery and otherwise which were pertinent to the determination and such documents are not

protected by attorney-client privilege nor the work product doctrine." (R. Doc. 17-1 at 9-10).  To

the extent the foregoing discovery requests were vaguely worded or overly broad, it is now clear

that Plaintiff is seeking identification of all documents in USAA's possession, custody, or

control obtained in discovery or otherwise obtained from third parties, including medical records,

that were used in USAA's determination to make no additional tender.  This information is not

privileged or protected by the work product doctrine.  Accordingly, USAA must identify the foregoing documents obtained and used in USAA's determination to not provide an additional tender, including the general location of any such documents.

Interrogatory No. 24 seeks the identification of the date upon which the foregoing information was obtained and the person who obtained the information. (R. Doc. 17-5 at 7). USAA responded that its counsel "has received medical records and information throughout the pendency of this litigation, with said information analyzed and communicated" to USAA. (R. Doc. 17-5 at 7-8; R. Doc. 17-9 at 6).  The timing of USAA's receipt of the documents identified in response to Interrogatory No. 22 and 23 is relevant to Plaintiff's bad faith claims and is non-privileged factual information.  USAA need only identify the date upon which the information was received by USAA and/or its representative.  USAA need not identify the specific individuals who received the information or the method by which it was received.

USAA must provide the foregoing supplemental answers to Plaintiff's Interrogatory Nos. 20, 22, 23, and 24 within **14 day** of the date of this Order.

### b.        Request for Production Nos. 37-41, 43, 45, and 46

Plaintiff's Request for Production Nos. 37-41, 43, 45, and 46 collectively seek the production of Plaintiff's entire claims file. (R. Doc. 17-5 at 17-20).  While most of the document requests identify subsets of the claims file, Request for Production No. 46 is a catch-all provision that effectively results in Plaintiff seeking the entire claims file.  In response to these requests, USAA asserts that all post-litigation claim information is subject to the attorney-client privilege and/or the work product doctrine, and only produced "pre-suit claim file documents." (R. Doc. 17-5 at 17-20; R. Doc. 17-9 at 15-18).  USAA did not object to these requests on the basis of relevance.

Plaintiff now argues that he is only seeking the production of any "responsive, non-privileged documents being withheld." (R. Doc. 17-1 at 12).  In addition to arguing that the information sought is protected from disclosure in light of attorney involvement, USAA opposes any additional production on the basis that the only information relevant to the Plaintiff's bad faith claims are the underlying documents reviewed to determine the valuation of Plaintiff's claim, which are already in Plaintiff's possession. (R. Doc. 20 at 11-14).

USAA is correct that "[a] simple assertion that an insured cannot otherwise prove her case of bad faith does not automatically permit an insured to rummage through the insurers' claims file." *Dixie Mill*, 168 F.R.D. at 559 (internal punctuation removed).  Indeed, "[t]he reasonableness of the insurers' actions in a bad faith case can be proved by objective facts, which are not shielded from discovery and do not *necessarily* require the introduction of privileged communications at trial." *Id*. (citations omitted).  "The facts, rather than the legal advice or opinions, underlying the insurers' decisions at issue in the instant litigation can be developed through depositions and other discovery of non-privileged information." *Id*. (citations omitted).

Consistent with *Dixie Mill*, the Court will not require USAA to produce information in the claims file that is subject to the attorney-client privilege and/or the work product doctrine.  USAA may withhold information over which it is asserting those protections and identify those withheld documents on an appropriate privilege log.  But given that Plaintiff was provided leave to assert bad faith claims related to the post-litigation demand, the post-litigation claims file falls within the scope of discovery to the extent it contains factual information not shielded from discovery pursuant to the attorney-client privilege and/or the work product doctrine.  USAA must produce any withheld non-privileged correspondence and other claims information created by claims handlers that do not involve counsel, if any, responsive to these discovery requests.

USAA must also inform Plaintiff whether "any responsive materials are being withheld" on the basis of its objections. *See* Fed. R. Civ. P. 34(b)(2)(C).

USAA must provide the foregoing supplemental responses to Plaintiff's Request for Production Nos. 37-41, 43, 45, and 46 – including any supplements to its privilege log – within **14 day** of the date of this Order or entry of a protective order governing the exchange of confidential information.

### c.    Request for Production No. 42

Plaintiff's Request for Production No. 42 seeks the production of "copies of any and all memoranda, manuals, bulletins, instruments and/or documents which memorialize, identify, inform and/or advise employees and/or agents of [USAA] on how to handle, adjust or otherwise address an uninsured/underinsured first-party insurer claim." (R. Doc. 17-5 at 18-19).  In response to the request, USAA asserts that all post-litigation claim information is subject to the attorney-client privilege and/or the work product doctrine and that this information is irrelevant. (R. Doc. 17-5 at 19; R. Doc. 17-9 at 17).  USAA argues that the request is "grossly overbroad" because it is not limited in time period or scope and otherwise seeks irrelevant information because this is a "pure valuation dispute." (R. Doc. 20 at 15-16).  USAA further argues that any and all requests discovery with respect to "USAA's general policies, practices, and procedures" is "pattern and practice" and "institutional discovery" that is irrelevant to the "value dispute" at issue.  (R. Doc. 18-1 at 8-11).

As discussed above, the Court has allowed Plaintiff to proceed on his post-litigation bad faith claim.  The Court will require USAA to provide copies of all relevant portions of claims handling policies, practices, and procedures that pertain to the valuation of an uninsured/underinsured first-party insurer claim after the submission of proof of loss.  The

production is limited to information available at the time of the February 3, 2020 demand and which would be referenced by a claims handler in the normal course of adjusting a claim such as the one made by Plaintiff.

USAA must provide the foregoing supplemental response to Plaintiff's Request for Production No. 42 – including any supplements to its privilege log – within **14 days** of the date of this Order or entry of a protective order governing the exchange of confidential information.

### d.    Depositions of Claims Handlers

Plaintiff seeks an order compelling USAA to provide dates for the requested deposition of Lisa Bocanegra and any other USAA adjusters involved in the handling of Plaintiff's claim. (R. Doc. 17-1 at 13-14).

It is unclear whether Plaintiff has noticed the deposition of Lisa Bocanegra as required by Rule 30(b)(1) of the Federal Rules of Civil Procedure.  The Court is aware, however, that USAA has not yet responded in full to Interrogatory No. 20 by identifying any additional claims handlers involved in Plaintiff's claims.  Accordingly, the Court will provide Plaintiff the opportunity to serve appropriate notices of the depositions with respect to Lisa Bocanegra and any claims handlers identified by USAA in response to Interrogatory No. 20 within **7 days** of the identification of the claims handers.  The deposition notice shall set the date for the depositions of the foregoing individuals within **30 days** of the date of the notice.[5]

### e.    USAA's Rule 30(b)(6) Deposition

Finally, Plaintiff seeks an order compelling USAA to provide dates for its Rule 30(b)(6) deposition. (R. Doc. 17-1 at 14).  The record only contains a "draft" copy of a Rule 30(b)(6) notice submitted to USAA. (R. Doc. 17-6).  This draft document lists 64 topics of inquiry and

---

[5] The parties may modify these deposition dates by agreement.

seeks the production of 46 categories of documents. Plaintiff raises no specific arguments in support of an order compelling the Rule 30(b)(6) deposition to take place on the full range of the 64 topics or otherwise for an order compelling the production of any information sought in conjunction with the deposition. Plaintiff did not subsequently submit a motion seeking to compel an actually served copy of the Rule 30(b)(6) notice of deposition and associated requests for production.

USAA's Motion for Protective Order seeks an order quashing Plaintiff's draft Rule 30(b)(6) notice and associated document requests in its entirety. (R. Doc. 18).[6] USAA broadly argues that the deposition topics and discovery requests seek information protected by the attorney-client privilege and/or work product doctrine or are otherwise overly broad, burdensome, and irrelevant. These arguments are similar to those raised by USAA in opposition to Plaintiff's Motion to Compel. In opposing USAA's Motion for Protective Order, Plaintiff merely argues that information within the "claims file" is relevant to Plaintiff's bad faith claims and any attorney opinion work product is discoverable because USAA's counsel operated as a "de facto" claims adjuster. (R. Doc. 19). Plaintiff makes no specific arguments, however, with respect to the deposition topics and/or document requests contained in the draft Rule 30(b)(6) deposition notice. Plaintiff makes no representations as to the extent to which the requests for production accompanying the Rule 30(b)(6) notice of deposition are duplicative of earlier document requests.

The Court will not enforce the Rule 30(b)(6) deposition notice and document request as written. Foremost, the notice does not meet the basic requirements of Rule 30(b)(1) by setting a

---

[6] USAA also generally seeks a protective order with respect to Plaintiff's Second Set of Discovery because it seeks privileged and irrelevant information. The deadline to file discovery motions expired on October 9, 2020. (R. Doc. 24). Other than the interrogatories and document requests at issue in this order, Plaintiff has not sought an order compelling any further responses to his Second Set of Discovery.

time and place for the deposition.  The Court will not order the Defendants to attend and/or provide dates of availability for depositions in the absence of a properly issued deposition notices as detailed by Rule 30(b)(1).  *See Byrd v. Castlepoint Fla. Ins. Co.*, No. 15-634, 2016 WL 1559584, at *2 (M.D. La. Apr. 18, 2016) (collecting cases).  Furthermore, while Rule 30 provides that a request for documents under Rule 34 may accompany a notice to a party deponent, "every discovery request . . . must be signed by at least one attorney of record in the attorney's own name."  Fed. R. Civ. P. 26(g)(1).  A party has "no duty to act on an unsigned . . . request . . . until it is signed."  Fed. R. Civ. P. 26(g)(2).  The 46 document requests incorporated into the draft deposition notice are unsigned. (*See* R. Doc. 17-6 at 13).  Accordingly, USAA had no duty to respond to these unsigned draft document requests.[7]

Given the record, the Court will provide Plaintiff an opportunity to take the Rule 30(b)(6) deposition of USAA, but not to the extent sought in the current deposition notice.  Plaintiff has made no effort to a finding that each of the 64 topics listed in the draft deposition notice seek information within the scope of discovery.  Plaintiff is to serve a revised Rule 30(b)(6) deposition notice on USAA within **7 days** of the date of this Order.  The deposition notice shall set the date for the Rule 30(b)(6) deposition within **30 days** of the date of the notice.[8]  The deposition notice must limit the deposition topics to Plaintiff's specific claim and claims file, as well as the written discovery sought and obtained in this action, including the supplemental responses required by this Order.  The parties are to meet and confer in good faith with respect to the topics in the revised Rule 30(b)(6) deposition notice prior to the filing of any additional

---

[7] Plaintiff has not separately filed any motion to compel seeking an order compelling the production of the documents sought through the deposition notice.  Plaintiff's instant Motion to Compel makes no reference to these document requests.  Finally, in opposing USAA's Motion for Protective Order, Plaintiff raises no specific arguments in support of a finding that any of the document requests seek relevant information.

[8] The parties may modify the date of the deposition by agreement.

motions with respect to the deposition topics. Finally, at the deposition, USAA may direct the corporate representative not to answer any questions that would reveal information protected by the attorney-client privilege or work product doctrine.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel Adequate Responses to Interrogatories and Requests for Production of Documents and to Compel Depositions (R. Doc. 17) is **GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER ORDERED** that USAA Casualty Insurance Company's Motion to Quash Deposition and Discovery and/or Protective Order With Request for Oral Argument (R. Doc. 18) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs pursuant to Rule 37(a)(5)(C).

Signed in Baton Rouge, Louisiana, on October 27, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**